WARREN NGUYEN, Bar No. 195408
NGUYEN & CREW, PC
93 Devine Street, #100
San Jose, CA 95110
Telephone: 408-292-4623
Fax:   408-292-4624

Attorneys for Plaintiff



FILED

OCT 1 8 2011

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
MIRANDA DOMINGUEZ

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| Mimi Nguyen, John Nguyen, Loc Phan, Bich Tong, individually | Case No. 109CV155976 |
| Plaintiffs, | FOURTH AMENDED COMPLAINT FOR: |
| vs. | Breach of Contract, Common Count, Accounting, Unfair Business Practices, Fraud, Civil Conspiracy, Intentional Interference of Contractual Relations, & Damages |
| Hung Nguyen, an individual; N & H Investments, LLC; Barry Swenson Builder dba Green Valley Corporation | |
| Defendants, | |
| Does 2-10 | |

PLAINTIFF COMPLAINS AND FOR CAUSES OF ACTION ALLEGE AS FOLLOWS:

PARTIES

1.    Plaintiffs, MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, BICH TONG, are, and at all relevant times to this action,  individuals residing in the City of San Jose, County of Santa Clara, State of California.

2.     Defendant, HUNG NGUYEN, is, and at all relevant times to this action, an individual residing in the City of San Jose, County of Santa

Case 15-05052   Doc 01   Filed 05/21/15   Entered 05/21/15 13:32:24   Page 1 of 46 of 47

Clara, State of California. HUNG NGUYEN is the owner of N & H INVESTMENTS, LLC

3.  Defendant, N & H INVESTMENTS, LLC (hereinafter referred to as "INVESTMENTS"), is, and at all times relevant to this action, a limited liability company incorporated in the State of California and has its principle place of business in the county of Santa Clara, California. N & H INVESTMENTS, LLC is the alter ego of HUNG NGUYEN.

4.  Defendant, BARRY SWENSON BUILDER dba GREEN VALLEY CORPORATION (hereinafter referred to as "GREEN VALLEY") is a California Corporation and has its headquarter in the county of Santa Clara, CA. GREEN VALLEY is in the business of developing commercial real properties.

5.  At all times herein mentioned, Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 2 to 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

6.  Plaintiff is informed and believed and thereon allege that, in performing each of the acts herein alleged, each of the Defendants was the agent, employee and servant of each other Defendant, and in doing the acts alleged herein, was acting within the course and scope of such relationship.

JURISDICTION

7.     Defendants' contractual obligations were performed in Santa Clara County and the wrongs alleged herein occurred in Santa Clara County. Pursuant to the Code of Civil Procedures Sec. 395.5, this Court is the forum in which to litigate this lawsuit.

<u>FACTS PERTAINTING TO COMPLAINT</u>

8.     HUNG NGUYEN was and continues to be an owner and developer of a shopping complex located at 2266 Senter Road, San Jose, Santa Clara County, California.

9.     The shopping complex had multiple individual units listed for sale.

10.     On or about November 2007, Plaintiff Mimi Nguyen responded to an advertisement by HUNG NGUYEN for sale of one of the units under construction at 2266 Senter Road, San Jose, CA.

11.     Plaintiff Mimi Nguyen went to the shopping complex and met with HUNG NGUYEN who represented himself as the owner and developer of the shopping complex. HUNG NGUYEN represented that he develops the shopping complex through his limited liability company, N & H INVESTMENTS, LLC,

12.     After negotiation of purchase price, Plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong entered into an agreement with HUNG NGUYEN for purchase of Unit 21.

13.     The full purchase price of Unit 21 was eight hundred seventy two thousand eight hundred sixty five dollars ($872,856.00).

14.     Under the terms of the purchase agreement, plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong were to deposit into escrow the amount of two hundred sixty one thousand eight hundred sixty dollars ($261,860.00) with remainder of purchase price to be financed by a certain lender upon close of escrow. Plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong deposited said amount into an escrow account with Chicago Title. Attached herein as Exhibit A is a true and correct copy of the purchase agreement.

15.     At no time during the negotiation did HUNG NGUYEN disclose to plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong that the site was contaminated.

16.     During the due diligence phase, plaintiffs discovered the construction site of Unit 21 was contaminated.

17.     Since the site was contaminated and could not pass environmental clearance, lenders were unwilling to finance the purchase of Unit 21.

18.     Upon discovery of the contamination, plaintiffs informed HUNG NGUYEN that PLAINTIFF would not proceed with the closing of Unit 21.

19.     HUNG NGUYEN agreed to null and void the purchase agreement and release plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong from further contractual obligations. HUNG NGUYEN also agreed to

refund the deposit. Attached herein as Exhibit B is a true and correct copy of the "Cancellation of Purchase and Sale and Escrow Instructions."

20.     However, HUNG NGUYEN only refunded $50,000.00 of the original $261,860.00 that plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong deposited with Chicago Title.

21.     HUNG NGUYEN refunded the $50,000.00 in the form of two separate checks. One check was in the amount of $30,000.00 and the other check in the amount of $20,000.00. Attached as Exhibit C is a true and correct copies of the two checks.

22.     The $30,000.00 check was from the business account of N & H INVESTMENTS. The $20,000.00 check appeared to be a personal account where the account holders were listed as "N & H INVESTMENTS, LLC, HUNG QUANG NGUYEN, HONG THI HANH."

23.     Since only releasing the partial deposit, HUNG NGUYEN has repeatedly promised plaintiffs that HUNG NGUYEN would refund the full amount.

24.     These promises, nevertheless, were empty promises and to this day, HUNG NGUYEN refuses to refund the full amount even after agreeing to null and void the purchase agreement.

25.     HUNG NGUYEN still owes plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong $211,860.00.

26.     HUNG NGUYEN has breached his contractual obligations by refusing to refund the full deposit and has engaged in bad faith business

practices by inducing plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong to purchase UNIT 21 with the knowledge that the site was contaminated.

27.     Further, HUNG NGUYEN had partnered with defendant GREEN VALLEY during the construction of 2266 Senter Road, San Jose, Santa Clara.

28.     GREEN VALLEY and HUNG NGUYEN conspired to induce Plaintiffs into entering an agreement to purchase UNIT 21 with the full knowledge that the site was contaminated.

29.     GREEN VALLEY interfered with Plaintiff's rights under the purchase agreement by refusing to sign escrow instructions to release the full deposit

30.     Plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong have suffered monetary and general damages as a result of HUNG NGUYEN'S breach and bad faith and hereby, bring this action to redress such matters.

### FIRST CAUSE OF ACTION
BREACH OF CONTRACT
*Against HUNG NGUYEN /N & H INVESTMENTS*

31.     Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 30 inclusive, as set forth fully herein.

32.     Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG entered into a written purchase agreement with HUNG NGUYEN on or about March 9, 2007 for the purchase of Unit 21 located at 2266 Senter Road, San Jose, CA.

33.     It is believed that HUNG NGUYEN was the sole shareholder or owner of N & H INVESTMENTS, LLC.

34.     As consideration, Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG, collectively, deposited $261,860.00 with Chicago Title escrow.

35.     Pursuant to section 1.2.2 (ii) of the purchase agreement, it states: "IF THE SALE OF THE PROPERTY IS NOT CONSUMATED DUE TO FAILURE OF ANY CONDITION PRECEDENT OR SELLER'S DEFAULT HEREUNDER, THEN DEPOSIT SHALL BE RETURNED TO BUYER."

36.     Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG detrimentally relied on such representation by HUNG NGUYEN.

37.     Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG subsequently discovered the site of construction of Unit 21 was contaminated.

38.     Upon discovery of the contamination, Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG, without fault, withdrew from further pursuit of Unit 21.

39.     HUNG NGUYEN agreed to release Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG from further contractual obligations.

40.     HUNG NGUYEN released Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG from the sale contract by personally signing "Cancellation of Purchase and Sale and Escrow Instructions." See Exhibit B.

41.     However, HUNG NGUYEN breached the terms of the original purchase agreement by refunding Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG only $50,000.00 of the $261,860.00 PLAINTIFFS deposited.

42.     HUNG NGUYEN developed said commercial shopping complex through the name N & H INVESTMENTS, LLC.

43.     HUNG NGUYEN and N & H INVESTMENTS, LLC share the same bank account as evidence in Exhibit C of this complaint.

44.     By only refunding $50,000.00 to plaintiffs, HUNG NGUYEN and other defendants would stand to benefit the amount of $211,860.00.

45.     N & H INVESTMENTS, LLC is the alter ego of HUNG NGUYEN.

46.     The acts relating to this contract were performed by HUNG NGUYEN.

47.     Since HUNG NGUYEN is the sole owner, N & H INVESTMENTS, LLC cannot exist or operate without HUNG NGUYEN.

48. Further, since HUNG NGUYEN would benefit from the non-refunded amount of $211,860.00, it would be inequitable not to hold HUNG NGUYEN responsible since N & H INVESTMENTS, LLC is only an alter ego.

49. Due to the breach by HUNG NGUYEN & his alter ego, N & H INVESTMENTS, Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG have suffered monetary damages in the amount of $211,860.00.

<u>SECOND CAUSE OF ACTION</u>
COMMOM COUNT
Against HUNG NGUYEN/ N & H INVESTMENTS

50. Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 50 inclusive, as set forth fully herein.

51. Pursuant to section 1.2.2 (ii) of the purchase agreement, HUNG NGUYEN was contractually obligated to refund the full deposit of $261,860.00 to plaintiffs Mimi Nguyen, John Nguyen, Loc Phan, & Bich Tong if the sale of Unit 21 was not consummated due to no fault of the plaintiffs.

52. At no time during the negotiation did HUNG NGUYEN inform Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG that the site was contaminated.

53.     Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG subsequently discovered during due diligence phase that the construction site of Unit 21 was contaminated.

54.     HUNG NGUYEN null and voided the purchase agreement and agreed to release Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG from further contractual obligations.

55.     HUNG NGUYEN released PLAINTIFF from the sale contract by personally signing "Cancellation of Purchase and Sale and Escrow Instructions." See Exhibit B.

56.     Upon voiding the purchase contract, HUNG NGUYEN became indebted to Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG for monies had and received in the amount of $211,860.00 which represents the amount outstanding from the original deposit.

57.     HUNG NGUYEN developed said commercial shopping complex under the name N & H INVESTMENTS, LLC.

58.     N & H INVESTMENTS, LLC is the alter ego of HUNG NGUYEN.

59.     The acts relating to this contract were performed by HUNG NGUYEN.

60.     Since HUNG NGUYEN is the sole owner, N & H INVESTMENTS, LLC cannot exist without HUNG NGUYEN.

61.     Further, since HUNG NGUYEN personally benefitted from the non-refunded amount of $211,860.00, it would be inequitable not to hold

HUNG NGUYEN responsible since N & H INVESTMENTS, LLC is only alter ego and did not benefit from the monies.

62.     Neither the whole nor the part of this sum has been paid although demand thereof has been made.

### THIRD CAUSE OF ACTION
ACCOUNTING
Against N & H INVESMENTS

63.     Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 63 inclusive, as set forth fully herein.

64.     Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG are entitled to an accounting by HUNG NGUYEN of the full deposit.

65.     Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG have demanded HUNG NGUYEN provide records of the $211,860.00 still owing.

66.     Despite Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG's demand to HUNG NGUYEN and his alter ego, N & H INVESTMENTS for such information and the release of said monies, N & H INVESTMENTS, LLC has refused to provide the requested information and has refused to release the monies.

### FOURTH CAUSE OF ACTION
UNFAIR BUSINESS PRACTICES

Bus. Prof. Code 17200 et seq
Against HUNG NGUYEN/ N & H INVESTMENTS

67.     Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 67 inclusive, as set forth fully herein.

68.     HUNG NGUYEN was the owner and developer of the shopping complex located at 2266 Senter Road, Unit 21, San Jose, Santa Clara County, California.

69.     HUNG NGUYEN owned and developed the shopping complex under the name N & H INVESTMENTS, LLC.

70.     N & H INVESTMENTS, LLC was the alter ego of HUNG NGUYEN.

71.     HUNG NGUYEN knew or should have known that the site was contaminated.

72.     Nevertheless, HUNG NGUYEN induced Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG into purchasing Unit 21 knowing that the site was contaminated.

73.     HUNG NGUYEN refused to release the full deposit money when Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG discovered the site was contaminated and withdrew from the purchase.

74.     Said conduct by HUNG NGUYEN was unlawful, unfair, and fraudulent business practices within the meaning of Business and Professions Code section 17200 et seq. in that the conduct violated such provisions.

75.    HUNG NGUYEN'S conduct caused Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG substantial injury and monetary loss and unless HUNG NGUYEN is restrained from continuing this unlawful conduct, unfair, and fraudulent practices, Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG will continue to suffer financial and monetary loss.

76.    As a proximate of the conduct alleged herein, HUNG NGUYEN and is alter ego, N & H INVESTMENTS, have been unjustly enriched. Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG are entitled to the full refund of the deposit monies.

<u>FIFTH CAUSE OF ACTION</u>
FRAUD
Against HUNG NGUYEN

77.    Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 77 inclusive, as set forth fully herein.

78.    HUNG NGUYEN was the owner and developer of the shopping complex located at 2266 Senter Road, Unit 21, San Jose, Santa Clara County, California.

79.    HUNG NGUYEN owned and developed the shopping complex under the name N & H INVESTMENTS, LLC.

80.    N & H INVESTMENTS, LLC was the alter ego of HUNG NGUYEN.

81.    HUNG NGUYEN knew or should have known that the site was contaminated.

82.    HUNG NGUYEN had the strict duty to disclose to Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG that the site was contaminated.

83.  ·    HUNG NGUYEN induced Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG into purchasing Unit 21 knowing that the site was contaminated and that plaintiffs would not be able to get financing.

84.    It was HUNG NGUYEN's intention to induce Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG to deposit ($261,860.00) and to keep the deposit once Plaintiffs could not obtain financing.

85.    Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG detrimentally relied on HUNG NGUYEN'S representation that the deposit would be released if financing could not be obtained.

86.    HUNG NGUYEN refused to release the full deposit money when Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG discovered the site was contaminated and withdrew from the purchase.

87.    The act of inducing Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG into depositing $261,860.00 into a contaminated site with the intention of not refunding the deposit once the contamination was discovered amounted was deceitful and amounted to fraud.

88.    HUNG NGUYEN'S deceitful conduct caused Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG substantial injury and monetary loss and unless HUNG NGUYEN is restrained from continuing this unlawful conduct, unfair, and fraudulent practices, plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG will continue to suffer financial and monetary loss.

89.    As a proximate of the conduct alleged herein, HUNG NGUYEN have been unjustly enriched. Plaintiffs MIMI NGUYEN, JOHN NGUYEN, LOC PHAN, and BICH TONG are entitled to the full refund of the deposit monies.

### SIXTH CAUSE OF ACTION
### CIVIL CONSPIRACY
Against HUNG NGUYEN & BARRY SWENSON dba GREEN VALLEY CORPORATION

90.    Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 90 inclusive, as set forth fully herein.

91.    HUNG NGUYEN & GREEN VALLEY were partners in the construction of UNIT 21.

92.    GREEN VALLEY knew the site was contaminated.

93.    GREEN VALLEY was aware that HUNG NGUYEN planned to fraudulently induce Plaintiffs into entering an agreement for the purchase of UNIT 21 and depositing the money into escrow.

94.    GREEN VALLEY agreed with HUNG NGUYEN and conspired with HUNG NGUYEN to commit the fraud.

NGUYEN v. N & H INVESTMENTS, LLC ET AL--FOURTH AMENDED COMPLAINT FOR DAMAGES- 15

95. It was GREEN VALLEY'S intention that once the money was committed into escrow, GREEN VALLEY would also refuse and refund the deposit money to Plaintiffs once Plaintiffs discovered the site was contaminated.

96. As a proximate and direct result of the conspiracy between HUNG NGUYEN and GREEN VALLEY, Plaintiffs have suffered damages.

<u>SEVENTH CAUSE OF ACTION</u>
INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
Against BARRY SWENSON dba GREEN VALLEY CORPORATION

97. Plaintiff re-alleges and incorporates herein by reference all allegations contained in paragraphs 1 to 97 inclusive, as set forth fully herein.

98. Plaintiffs and HUNG NGUYEN entered into an agreement for the purchase of UNIT 21 located at 2266 Senter Road, San Jose, CA.

99. Pursuant to said agreement, Plaintiffs deposited $261,860.00 into an escrow account with Chicago Title Company.

100. GREEN VALLEY was a partner of HUNG NGUYEN and knew of such agreement.

101. Since GREEN VALLEY partnered with HUNG NGUYEN in the construction of Unit 21, Chicago Title Company will not release the deposit to Plaintiffs unless GREEN VALLEY also signs escrow instructions releasing the deposit to Plaintiffs.

NGUYEN v. N & H INVESTMENTS, LLC ET AL.--FOURTH AMENDED COMPLAINT FOR DAMAGES- 16

102. The deposit money in the escrow account with Chicago Title Company rightfully belongs to Plaintiffs.

103. GREEN VALLEY intended to disrupt the performance of the contract between Plaintiffs and HUNG NGUYEN by refusing to sign escrow instructions for the return of the deposit to Plaintiffs once Plaintiff discovered the site was contaminated.

104. GREEN VALLEY has, in fact, refused to sign escrow instructions releasing the deposit to Plaintiffs.

105. By refusing to sign escrow instructions for the return of the deposit money, GREEN VALLEY's conduct prevented the performance of the contract.

106. Plaintiffs have been harmed by GREEN VALLEY' conduct since Plaintiffs are deprived of the deposit that rightfully belongs to them.

107. GREEN VALLEY's conduct was a substantial factor in causing harm to Plaintiffs.

108. Plaintiffs have suffered damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PLAINTIFF prays for judgment against HUNG NGUYEN, his alter ego, N & H INVESTMENTS, LLC, & BARRY SWENSON dba GREEN VALLEY CORPORATION as follows:

1. For an accounting of the monies

2. For $211,860.00 representing the amount remaining on the full deposit

3. For punitive damages resulting from HUNG NGUYEN'S fraud.

4. For order that HUNG NGUYEN & BARRY SWENSON dba GREEN VALLEY sign escrow instructions to release the full deposit money to Plaintiffs

5. For costs of suit incurred in this action including reasonable attorney's fees allowed by contract and/or under Civil Code Procedure section 1021; and

6. For such other and further relief as the court deems proper.

Dated: 10-12-11

NGUYEN & CREW

Warren Nguyen
Attorneys for Plaintiff

# EXHIBIT A

# PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS

between

## N & H Investment, LLC
as Seller

and

## John Nguyen/Bich Tong/Loc Phan/Mi Mi Nguyen
as Buyer

# TABLE OF CONTENTS

Page

LIST OF EXHIBITS:

EXHIBIT A     Property Description

EXHIBIT B     Improvements

# PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS

This Purchase and Sale Agreement and Escrow Instructions ("Agreement"), dated as of March 9, 2007, is entered into by and between N & H Investment, LLC, a California limited liability company ("Seller"), and John Nguyen, Bich Tong, Loc Phan, and Mi Mi Nguyen ("Buyer") based on the recitals set forth below, all of which are incorporated in this Agreement and agreed by Buyer and Seller to be true and correct.

## Recitals

A.    Seller has an agreement to purchase the real property located at 2266 Senter Road, San Jose, California, 95112 also commonly known as (Senter & Quinn Plaza) APN 477-73-039 and APN 477-73-042 ("Real Property").

B.    Seller desires to purchase the Real Property, demolish the improvements currently thereon and build one or more commercial buildings, including commercial condominium units for commercial uses, in one or more phases (the Real Property and the improvements hereafter being called the "Project").

C.    Seller desires to restrict uses in certain Units (defined below) and such uses will be more particularly specified in the Declaration of Covenants, Conditions and Restrictions ("CC&Rs") which will govern the Project.

D.    Seller has caused, or will cause, an architect to prepare conceptual plans for the Project showing approximate building sizes and locations based on preliminary discussions with the City of San Jose Planning Department.

E.    As of the date of this Agreement, Seller has not finalized any of the building designs or condominium plans nor has Seller received any development approvals or building permits to construct any improvements.

F.    Pursuant to Seller's current schedule, Seller intends to have the Project substantially completed by December 31, 2007.

G.    Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, one or more condominium units prior to their completion on the terms set forth below.

## Agreement

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

Case: 15-05052   Doc# 16 Filed: 05/27/15 Entered: 05/27/15 12:19:24 Page 22 of 47

# ARTICLE 1
## PURCHASE AND SALE OF PROPERTY

1.1 <u>Sale</u>. Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller subject to the terms, covenants and conditions set forth herein, the real property, together with any and all rights, privileges and easements appurtenant thereto owned by Seller, consisting of condominium Unit(s) 21 ("Unit") plus an undivided interest in the common area associated with the Unit, at **2266 Senter Road, San Jose, Santa Clara County, California** (the Unit and such undivided interests being called the "Property"). The "Area of the Unit" shall be approximately 1,467 square feet of space, consisting of the area of the Unit itself and a prorata share of all the building improvements, and is currently planned as shown in EXHIBIT A attached hereto. Buyer is not purchasing from Seller and Seller is not selling to Buyer, any personal property. Buyer acknowledges that the Unit shall be in shell condition and contain only the improvements described in EXHIBIT B ("Shell Improvements"), and no other improvements whatsoever. All further improvements desired by Buyer and not described in EXHIBIT B shall be installed by Buyer at Buyer's expense. Seller shall exercise commercially reasonable efforts to acquire the Real Property and to develop the same for commercial purposes, including commercial condominiums. Buyer further acknowledges that the Unit shown in EXHIBIT A is not an exact depiction or description of the Unit that will be conveyed to Buyer at the Closing (defined in section 1.2.2(iii)), and that EXHIBIT A is intended to show only the approximate size of the Unit and its location in relation to other Units. The legal description, when determined, shall be the description of the Unit and the appurtenant undivided interest in all the common area of the Project.

1.2 <u>Purchase Price</u>.

1.2.1 <u>Amount</u>. The purchase price of the Property is approximately Eight Hundred Seventy Two Thousand Eight Hundred Sixty Five Dollars ($872,865.00); the exact purchase price of the Property shall be the Area of the Unit multiplied by Five Hundred Ninety Dollars ($595.00) per square foot ("Purchase Price").

1.2.2 <u>Payment</u>. The Purchase Price shall be paid as follows:

(i) Upon Buyer's execution of this Agreement, Buyer shall deposit with Chicago Title Company, 110 W. Taylor Street, San Jose, CA 95112, Attn: Sharon LaFountain ("Escrow Holder"), in escrow # 98200542, cash in the amount of Two Hundred Sixty One Thousand Eight Hundred Sixty Dollars ($261,860.00) ("Deposit"). Upon receipt of each Deposit, Escrow Holder shall immediately release the same to Seller. If the sale of the Property is consummated as contemplated hereunder, the Deposit shall be credited against the Purchase Price. The Deposit shall not be held in trust by Seller and may be commingled with Seller's other funds and used in the development of the Project.

(ii) IF THE SALE OF THE PROPERTY IS NOT CONSUMMATED DUE TO THE FAILURE OF ANY CONDITION PRECEDENT OR SELLER'S DEFAULT HEREUNDER, THEN THE DEPOSIT SHALL BE RETURNED TO BUYER. IF THE SALE

\EW674902.1
110805-NEWNEW

IS NOT CONSUMMATED FOR ANY OTHER REASON, INCLUDING, WITHOUT LIMITATION, ANY DEFAULT BY BUYER HEREUNDER, THEN SELLER SHALL RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES. THE PARTIES HAVE AGREED THAT SELLER'S ACTUAL DAMAGES, IN THE EVENT OF A FAILURE TO CONSUMMATE THIS SALE AS SPECIFIED IMMEDIATELY ABOVE, WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. AFTER NEGOTIATION, THE PARTIES HAVE AGREED THAT, CONSIDERING ALL THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS AGREEMENT, THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE OF THE DAMAGES THAT SELLER WOULD INCUR IN SUCH EVENT, BY, AMONG OTHER THINGS, REMOVING THE PROPERTY FROM THE MARKET. BY PLACING THEIR INITIALS BELOW, EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENTS MADE ABOVE AND THE FACT THAT EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED, AT THE TIME THIS AGREEMENT WAS MADE, THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION.

BUYER

John Nguyen

Bich Tong

Loc Phan

Mi Mi Nguyen

SELLER
N & H Investment, LLC

By _____

(iii) The balance of the Purchase Price shall be paid to Seller all in cash at the consummation of the purchase and sale contemplated hereunder (the "Closing").

ARTICLE 2
CONDITIONS AND COVENANTS

2.1 Conditions Precedent to Buyer's Obligation. Buyer's obligation to purchase and Seller's obligation to sell, the Property is conditioned upon the following:

2.1.1 Intentionally Omitted

2.1.2 Seller successfully obtaining entitlements, the successful subdivision and creation of commercial condominiums, the construction of the improvements, and all financing

necessary for the foregoing, all in accordance with Seller's plans on or before December 31, 2007;

2.1.3  Seller's completion of the Unit, the common area of the Project on or before December 31, 2007.

2.1.4  The Area of the Unit being not more and not less than thirty percent (30%) of the approximate Area of the Unit set forth in section 1.1.

2.1.5  The title insurance policy to be issued to Buyer does not contain any exceptions for monetary liens (such as mechanic's liens and deeds of trust) other than for nondelinquent real estate taxes and assessments, assessments in connection with the operation of the condominium units on the Project, and financing and other liens placed on the Property by Buyer.  Such policy shall include title exceptions for the creation and operation of the condominiums, including the CC&Rs.

The foregoing conditions are for the benefit of both Buyer and Seller, and may be waived by either party, provided that such waiver is in writing.

2.2  Covenants.  In connection with the conditions set forth in section 2.1, Seller shall provide Buyer with the following:

2.2.1  Copy of a preliminary title report for the Project;

2.2.2  Copy of an environmental summary for the Project.  The original shall be available at Seller's office during regular business hours by appointment.

2.2.3  Copies of plans and list of improvements for the Property.

2.3  Within twenty (20) days after receiving the items described in paragraph 2.2.2 and 2.2.3, Buyer shall approve or disapprove of any of such items in writing specifically stating the reasons for disapproval of any item.  If such disapproval is reasonable, Buyer shall have the right to terminate this Agreement and receive back its Deposit.  If Buyer does not expressly disapprove any item, such item shall be conclusively deemed approved.

### ARTICLE 3
### BUYER'S EXAMINATION

3.1  Buyer's Independent Investigation.

3.1.1  Buyer acknowledges and agrees that it has been given or will be given before the satisfaction of the condition set forth in section 2.13, a full opportunity to inspect and investigate each and every aspect of the Property, either independently or through agents of Buyer's choosing, including, without limitation:

LEW874902.1
110805-NEWNEW

-4-

(i)    All matters relating to title, together with all governmental and other legal requirements such as taxes, assessments, zoning, use permit requirements and building codes.

(ii)    The physical condition of the Property, including, without limitation, the interior, the exterior, the structure, the paving, the utilities, and all other physical and functional aspects of the Property.  Such examination of the physical condition of the Property shall include an examination (the "Toxics Examination") for the presence or absence of hazardous or toxic materials, substances or wastes (collectively, "Hazardous Materials"), which Toxics Examination shall be performed or arranged by Buyer for the benefit of Buyer and Seller at Buyer's sole expense.  Notwithstanding the foregoing, Buyer shall not in any way be liable to Seller for the content, methods, accuracy, or conclusions of the Toxics Examination.  Further, if this Agreement terminates due to Buyer's objection to the presence of Hazardous Materials in amounts that require their removal by applicable law, and Seller's failure to timely remove such Hazardous Materials to such a point that they no longer are required to be removed, then Seller shall (subject to Seller's prior written approval of the contract pursuant to which the Toxics Examination is performed and all change orders issued with respect thereto) return to Buyer the Deposit and any Additional Deposit.  Buyer shall deliver to Seller copies of all reports prepared by or at the request of Buyer, and Seller shall be entitled to the return, if available, of all water or soils samples taken from the Property, in connection with the Toxics Examination.

(iii)    Any easements and/or access rights affecting the Property.

(iv)    All other matters of material significance affecting the Property.

3.1.2  BUYER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT SELLER IS SELLING AND BUYER IS PURCHASING THE PROPERTY ON AN "AS IS WITH ALL FAULTS" BASIS AND THAT BUYER IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS (EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT) OR IMPLIED, FROM SELLER, ITS AGENTS, OR BROKERS AS TO ANY MATTERS CONCERNING THE PROPERTY, INCLUDING WITHOUT LIMITATION:  (i) THE QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE STRUCTURAL ELEMENTS, FOUNDATION, ROOF, APPURTENANCES, ACCESS, LANDSCAPING, PARKING FACILITIES AND THE ELECTRICAL, MECHANICAL, HVAC, PLUMBING, SEWAGE, AND UTILITY SYSTEMS, FACILITIES AND APPLIANCES, (ii) THE QUALITY, NATURE, ADEQUACY, AND PHYSICAL CONDITION OF SOILS, GEOLOGY AND ANY GROUNDWATER, (iii) THE EXISTENCE, QUALITY, NATURE, ADEQUACY AND PHYSICAL CONDITION OF UTILITIES SERVING THE PROPERTY, (iv) THE DEVELOPMENT POTENTIAL OF THE PROPERTY, AND THE PROPERTY'S USE, HABITABILITY, MERCHANTABILITY, OR FITNESS, SUITABILITY, VALUE OR ADEQUACY OF THE PROPERTY FOR ANY PARTICULAR PURPOSE, (v) THE ZONING OR OTHER LEGAL STATUS OF THE PROPERTY OR ANY OTHER PUBLIC OR PRIVATE RESTRICTIONS ON USE OF THE PROPERTY, (vi) THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY APPLICABLE CODES, LAWS, REGULATIONS, STATUTES, ORDINANCES,

NEW974902.1
110805-NEWNEW

-5-

COVENANTS, CONDITIONS AND RESTRICTIONS OF ANY GOVERNMENTAL OR QUASI-GOVERNMENTAL ENTITY OR OF ANY OTHER PERSON OR ENTITY, (vii) THE PRESENCE OF HAZARDOUS MATERIALS ON, UNDER OR ABOUT THE PROPERTY OR THE ADJOINING OR NEIGHBORING PROPERTY, (viii) THE QUALITY OF ANY LABOR AND MATERIALS USED IN ANY IMPROVEMENTS ON THE PROPERTY, (ix) THE CONDITION OF TITLE TO THE PROPERTY, AND (x) THE ECONOMICS OF THE OPERATION OF THE PROPERTY.

3.2    Release.

3.2.1    Without limiting the above, Buyer waives its right to recover from Seller and from Seller's shareholders, directors and officers, the affiliates of Seller and the partners, trustees, shareholders, directors, officers, employees, members, and agents of each of them (collectively, the "Seller Related Parties"), and forever releases and discharges Seller and the Seller Related Parties from any and all damages, claims, losses, liabilities, penalties, fines, liens, judgments, costs or expenses whatsoever (including, without limitation, attorneys' fees and costs), whether direct or indirect, known or unknown, foreseen or unforeseen, that may arise on account of or in any way be connected with the physical condition of the Property or any law or regulation applicable thereto, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601 et seq.), the Resources Conservation and Recovery Act of 1976 (42 U.S.C. Sections 6901 et seq.), the Clean Water Act (33 U.S.C. Section 466 et seq.), the Safe Drinking Water Act (14 U.S.C. Sections 1401-1450), the Hazardous Materials Transportation Act (49 U.S.C. Section 1801 et seq.), the Toxic Substance Control Act (15 U.S.C. Sections 2601-2629), the California Hazardous Waste Control Law (California Health and Safety Code Sections 25100-25600), the Porter-Cologne Water Quality Control Act (California Health and Safety Code Section 13000 et seq.), and the Safe Drinking Water and Toxic Enforcement Act (California Health and Safety Code Section 25249.5 et seq.).

3.2.2    In connection with subsection 3.2.1 above, Buyer expressly waives the benefits of Section 1542 of the California Civil Code, which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR."

_____
Buyer

_____
Buyer

_____
Buyer

_____
Buyer

\EW674902.1
110805-NEWNEW

-6-

3.3 **Representations and Warranties of Seller.** Seller's Representations and Warranties. Seller represents and warrants to Buyer that:

(i) Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of California.

(ii) This Agreement and all documents executed by Seller which are to be delivered to Buyer at Closing (x) are or at the time of Closing will be duly executed and delivered by Seller, (y) are or at the time of Closing will be legal, valid and binding obligations of Seller, and (z) do not and at the time of Closing will not violate any provision of any agreement or judicial order to which Seller is a party or to which Seller or the Property is subject;

(iii) There are no leases, occupancy agreements, or any other contract affecting possession of the Unit that survives the Closing Date;

(iiv) To the best of Seller's knowledge, Seller has made no commitment to any governmental or quasi-governmental entity which commitment relates to the Property or imposes upon Seller, any obligation to pay or contribute property or money or to construct, install or maintain any improvements on or off the Property;

(v) Prior to the Closing Date, Seller, or an entity formed by Seller shall manage and operate the Property in a prudent manner, and shall continue to perform all normal repairs, replacements and maintenance between the date hereof and the Closing Date;

(vi) Seller is not involved in or aware of any pending or threatened litigation which does or will affect the Property.

3.4 **Representations and Warranties of Buyer.** Buyer warrants that it will not resell the Property until such time as Seller has completed the sale of all units in the Project or until such earlier time (not more than two years) as Seller may agree. Such restriction shall be included in the deed from Seller to Buyer at the Closing.

## ARTICLE 4
## TITLE

4.1 **Conditions of Title.** At the Closing, Seller shall convey title to the Property to Buyer by good and sufficient grant deed (the "Deed") subject to all exceptions of record, as disclosed by the preliminary title report, or other documents delivered to Buyer pursuant to Article 2 above, other than:

4.1.1 Nondelinquent liens for local real estate taxes and assessments;

4.1.2 Exceptions to title which would be disclosed by an inspection and/or survey of the Property;

NEW674902.1
110805-NEWNEW

-7-

4.1.3  Exceptions relating to any ingress, egress, access and/or public utility easements affecting the Property;

4.1.4  Exceptions in connection with the creation of condominiums in the Project, including any liens that may be assessed in connection with the future maintenance repair and replacement of the condominiums; and

4.1.5  Exceptions created or approved by Buyer.

All of the foregoing exceptions shall be referred to collectively as the "Conditions of Title."

4.2  **Evidence of Title**.  Delivery of title in accordance with the foregoing shall be evidenced by the willingness of the Title Company to issue, at Closing, its standard Owner's California Land Title Association Policy of Title Insurance in the amount of the Purchase Price, showing title to the Property vested in Buyer, subject to the Conditions of Title (the "Title Policy").

## ARTICLE 5
## RISK OF LOSS AND INSURANCE PROCEEDS

5.1  **Minor Loss**.  Buyer shall be bound to purchase the Property for the full Purchase Price as required by the terms hereof, without regard to the occurrence or effect of any damage to the Property or destruction of any improvements thereon or condemnation of any portion of the Property, provided that: (a) the cost to repair any such damage or destruction, or the diminution in the value of the remaining Property as a result of a partial condemnation, does not exceed Twenty Five Thousand Dollars ($25,000), and (b) upon the Closing, there shall be a credit against the Purchase Price due hereunder equal to the amount of any insurance proceeds or condemnation awards collected by Seller as a result of any such damage or destruction or condemnation, plus the amount of any insurance deductible, less any sums expended by Seller toward the restoration or repair of the Property.  If the proceeds or awards have not been collected as of the Closing, then such proceeds or awards shall be assigned to Buyer, except to the extent needed to reimburse Seller for sums expended to repair or restore the Property.  In any event, in case of a casualty, the amount of proceeds shall not be less than ninety-five percent (95%) of the reasonably estimated cost to repair or restore the Property.

5.2  **Major Loss**.  If the amount of the damage or destruction or condemnation as specified above exceeds Twenty Five Thousand Dollars ($25,000), then Buyer may, at its option to be exercised within ten (10) days of Seller's notice of the occurrence of the damage or destruction or the commencement of condemnation proceedings, either (a) terminate this Agreement by giving written notice to Seller within such ten-day period or (b) consummate the purchase for the full Purchase Price as required by the terms hereof.  If Buyer so terminates this Agreement, then the Deposit and the Additional Deposit shall be returned to Buyer and neither party shall have any further rights or obligations hereunder except as provided in sections 6.1, 9.9 and 9.10 below.  If Buyer elects to proceed with the purchase or fails to give Seller notice within

NEW674902.1
110805-NEWNEW

-8-

the above-referenced ten (10) day period of Buyer's termination of this Agreement, then upon the Closing, there shall be a credit against the Purchase Price due hereunder equal to the amount of any insurance proceeds or condemnation awards collected by Seller as a result of any such damage or destruction or condemnation, plus the amount of any insurance deductible, less any sums expended by Seller toward the restoration or repair of the Property. If the proceeds or awards have not been collected as of the Closing, then such proceeds or awards shall be assigned to Buyer, except to the extent needed to reimburse Seller for sums expended to repair or restore the Property. In any event, in case of a casualty, the amount of proceeds shall not be less than ninety-five percent (95%) of the reasonably estimated cost to repair or restore the Property.

## ARTICLE 6
## BROKERS AND EXPENSES

6.1    Brokers  The parties represent and warrant to each other that except for Selection Realty, whose commission, if any is due, shall be paid by Seller upon Closing in accordance with the provisions of a separate written agreement between Seller and such broker, no broker or finder was instrumental in arranging or bringing about this transaction and that there are no claims or rights for brokerage commissions or finder's fees in connection with the transaction contemplated by this Agreement. If any person brings a claim for a commission or finder's fee based upon any contact, dealings or communication with Buyer or Seller, then the party through whom such person makes his claim shall defend the other party (the "Indemnified Party") from such claim, and shall indemnify the Indemnified Party and hold the Indemnified Party harmless from any and all costs, damages, claims, liabilities or expenses, (including without limitation reasonable attorneys' fees and disbursements) incurred by the Indemnified Party in defending against the claim. The provisions of this section 6.1 shall survive the Closing or, if the purchase and sale is not consummated, any termination of this Agreement.

6.2    Expenses. Except as provided in sections 3.1.1(2) and 4.2 above and section 8.4.3 below, each party shall pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby.

## ARTICLE 7
## CLOSING AND ESCROW

7.1    Escrow Instructions. Prior to Closing, Seller shall deposit an executed counterpart of this Agreement with a title company ("Title Company") chosen by Seller and this instrument shall serve as the instructions to the Title Company as the escrow holder for consummation of the purchase and sale contemplated hereby.  Seller and Buyer agree to execute such reasonable additional and supplementary escrow instructions as may be appropriate to enable the Title Company to comply with the terms of this Agreement; provided, however, that in the event of any conflict between the provisions of this Agreement and any supplementary escrow instructions, the terms of this Agreement shall control.

7.2    Closing. The Closing hereunder shall be held and delivery of all items to be made at the Closing under the terms of this Agreement shall be made at the offices of the Title

NEW674902.1
110805-NEWNEW

-9-

Company twenty (20) days after substantial completion of the Unit or such other date and time as Buyer and Seller may mutually agree upon in writing (the "Closing Date").

7.3   Deposit of Documents.

7.3.1   At or before the Closing, Seller shall deposit into escrow the duly executed and acknowledged Deed conveying the Property to Buyer subject to the Conditions of Title;

7.3.2   At or before Closing, Buyer shall deposit into escrow: the cash portion of the Purchase Price and all prorations allocated to Buyer.

7.3.3   Buyer and Seller shall each deposit such other instruments as are reasonably required by the Title Company or otherwise required to close the escrow and consummate the purchase and sale of the Property in accordance with the terms hereof.

7.3.4   Seller shall deliver to Buyer originals of the items described in section 2.1.4 above at Closing.

7.4   Prorations.

7.4.1   Real property taxes and assessments; water, sewer and utility charges (calculated on the basis of the period covered); and any other expenses normal to the operation and maintenance of the Property, shall all be prorated as of 12:01 a.m. on the date the Deed is recorded, on the basis of a 365 day year.

7.4.2   The premium for the Title Policy, documentary transfer taxes, escrow fees and city transfer taxes, and recording charges shall be allocated to Buyer and Seller in accordance with the custom of the county.

7.5   Possession.   Seller shall deliver possession of the Property to Buyer on the Closing Date, free and clear of any leases or occupancy agreements.

ARTICLE 8
GENERAL

8.1   Notices.   Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, or (c) by a commercial overnight courier that guarantees next day delivery and provides a receipt, and such notices shall be addressed as follows:

To Buyer:          John Nguyen
                   1845 Trudean Way
                   San Jose, CA 95132

LEW674802.1
110805-NEWNEW

| with a copy to: | Imperial Investment & Development, Inc. |
| | 428 S. Main Street |
| | Milpitas, CA 95035 |
| | Attn: John Wynn |
| | |
| To Seller: | N & H Investment, LLC |
| | 426 S. Main Street |
| | Milpitas, CA 95035 |
| | Attn: Hung Nguyen |
| | |
| with a copy to: | **BERLINER COHEN** |
| | Ten Almaden Blvd., 11th Fl. |
| | San Jose, California 95113 |
| | Attn: Eric Wong |

or to such other address as either party may from time to time specify in writing to the other party. Any notice shall be effective only upon delivery.

8.2    <u>Entire Agreement</u>. This Agreement, together with the exhibits hereto, contains all representations, warranties and covenants made by Buyer and Seller and constitutes the entire understanding between the parties hereto with respect to the subject matter hereof. Any prior correspondence, memoranda or agreements are replaced and superseded in total by this Agreement together with the exhibits hereto.

8.3    <u>Entry and Indemnity</u>. In connection with any entry by Buyer, or its agents, employees or contractors onto the Property, Buyer shall give Seller reasonable advance notice of such entry and shall conduct such entry and any inspections in connection therewith in a manner reasonably acceptable to Seller. Without limiting the foregoing, prior to any entry to perform any on-site testing, Buyer shall give Seller written notice thereof, including the identity of the company or persons who will perform such testing and the proposed scope of the testing. Seller shall approve or disapprove the proposed testing within three (3) business days after receipt of such notice. If Buyer or its agents, employees or contractors take any sample from the Property in connection with any such approved testing, and, if feasible, Buyer shall provide to Seller a portion of such sample being tested to allow Seller, if it so chooses, to perform its own testing. Seller or its representative may be present to observe any testing or other inspection performed on the Property. Buyer shall promptly deliver to Seller copies of any reports relating to any testing or other inspection of the Property performed by Buyer or its agents, employees or contractors. Buyer shall indemnify and hold Seller harmless from and against any costs, damages, liabilities, losses, expenses, liens or claims (including, without limitation, reasonable attorney's fees) arising out of or relating to any entry on the Project by Buyer, its agents, employees or contractors in the course of performing the inspections, testings or inquiries provided for in this Agreement. The foregoing indemnity shall survive beyond the Closing, or, if the sale is not consummated, beyond the termination of this Agreement.

8.4    <u>Time</u>. Time is of the essence in the performance of each of the parties' respective obligations contained herein.

\EW674902.1
110205-NEWNEW

Case: 15-05052   Doc# 6-1  Filed: 05/27/15   Entered: 05/27/15 18:19:24   Page 32 of 47

8.5     Mediation and Arbitration.

8.5.1   Mediation of Disputes.  Any dispute or claim in law or equity arising out of or in connection with this Agreement, shall, prior to any arbitration, be submitted to nonbinding mediation. If the parties cannot agree on the selection of a mediator, the Presiding Judge of the Superior Court in the county where the Project is located shall select the mediator. Each party shall bear its own costs and attorneys' fees.

8.5.2   Arbitration.  Subject to paragraph 8.5.1, "Mediation of Disputes", any dispute or claim in law or equity arising out of or in connection with this Agreement shall be decided by binding arbitration in accordance with the California Code of Civil Procedure, Part III, Title 9.  Judgment upon any award rendered may be entered in a court having jurisdiction thereof.  The parties shall have the right to discovery pursuant to California Code of Civil Procedure, Section 1283.5.  If the parties cannot agree on the selection of an arbitrator, the Presiding Judge of the Superior Court in the county in which the Project is located shall select the arbitrator.  Each party shall bear its own costs and attorneys' fees.

NOTICE:  BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.  BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.  YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION

Case: 15-05058   Doc# 6-1 Filed: 05/27/15   Entered: 05/27/15 18:09:24   Page 33 of 46
Case: 15-05058   Doc# 6-1 Filed: 05/27/15   Entered: 05/27/15 18:09:24   Page 33 of 47

**BUYER**
John Nguyen

Bich Tong

Loc Phan

Mi Mi Nguyen

**SELLER**
N & H Investment, LLC

By _____

8.6     No Merger.  The obligations contained herein shall not merge with the transfer of title to the Property but shall remain in effect until fulfilled.

8.7     Assignment.  This Agreement shall not be assignable, and shall not be assigned by Buyer without the prior written consent of Seller, which consent may be withheld at Seller's sole and absolute discretion.  Seller shall have the right to assign this Agreement to any affiliate of Seller and upon any such assignment, Seller's future obligations under this Agreement shall be assumed by such assignee and Seller shall have no further obligation therefor.

8.8     Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

8.9     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of California.

8.10    Confidentiality and Return of Documents.  Buyer and Seller shall each maintain as confidential any and all material obtained about the other or, in the case of Buyer, about the Property and shall not disclose such information to any uninvolved third party.  Buyer shall have the right to disclose such information to involved third parties who require information because of such parties' relation to the acquisition, development, financing, leasing, analysis or ownership of the Property.

8.11    Interpretation of Agreement.  The article, section and other headings of this Agreement are for convenience of reference only and shall not be construed to affect the meaning of any provision contained herein.  Where the context so requires, the use of the singular shall include the plural and vice versa and the use of the masculine shall include the feminine and the neuter.  The term "person" shall include any individual, partnership, joint venture, corporation, trust, unincorporated association, any other entity and any government or any department or agency thereof, whether acting in an individual, fiduciary or other capacity.

8.12    Authority of Buyer.  Buyer represents and warrants to Seller that Buyer is a Partnership duly organized, validly existing, and in good standing under the laws of the State of California.  Buyer further represents and warrants to Seller that this Agreement and all

Case: 15-51052    Doc# 16   Filed: 05/27/15    Entered: 05/27/15 11:18:24    Page 34
of 47

documents executed by Buyer which are to be delivered to Seller at Closing (a) are or at the time of Closing will be duly authorized, executed and delivered by Buyer, (b) are or at the time of Closing will be legal, valid and binding obligations of Buyer, and (c) do not and at the time of Closing will not violate any provision of any agreement or judicial order to which Buyer is a party or to which Buyer is subject. The foregoing representation and warranty and any and all other representations and warranties of Buyer contained herein shall survive the Closing.

8.13 <u>Limited Liability</u>. The obligations of Seller are intended to be binding only on the property of Seller and the rents, issues and profits therefrom, or any substitutions thereof and neither Seller nor any of its partners, members, officers, employees, agents, attorneys or shareholders shall have any personal liability for any defaults under this Agreement. In addition, should Seller default under this Agreement, Buyer's sole and exclusive remedies shall be to either seek specific performance of Seller's obligations under this Agreement or terminate this Agreement and receive back its Deposit and Additional Deposit.

8.14 <u>Amendments</u>. This Agreement may be amended or modified only by a written instrument signed by Buyer and Seller.

8.15 <u>No Recording</u>. Neither this Agreement or any memorandum or short form thereof may be recorded by Buyer.

8.16 <u>Acceptance by Buyer</u>. If two counterparts of this Agreement are not executed by Buyer and received by Seller by 5:00 p.m. San Jose time on **March 19, 2007**, this Agreement shall become null and void.

The parties hereto have executed this Agreement as of the day and year first above written.

SELLER:

**N & H Investment, LLC**, a California limited liability company

By: _____

Its: _____

BUYER:

John Nguyen

a _____

By _____

Its: _____

EW674002.1
110805-NEWNEW                                    -14-

**Bich Tong**

a _____

By: _____

Its: _____


**Loc Phan**

a _____

By: _____

Its: _____


**Mi Mi Nguyen**

a _____

By: _____

Its: _____

EW874902.1
110805-NEWNEW

-15-

Case: 15-05058   Doc# 16-1   Filed: 05/27/15   Entered: 05/27/15 14:12:09   Page 36 of 47
Case: 15-05058   Doc# 16   Filed: 05/27/15   Entered: 05/27/15 18:24:29   Page 36 of 46

## EXHIBIT A

## DESCRIPTION OF REAL PROPERTY

All that certain real property situated in the City of San Jose, County of Santa Clara, California, described as follows:

Condominium Unit # 21

Case: 15-05052   Doc# 16   Filed: 05/27/15   Entered: 05/27/15 11:32:09   Page 36 of 47
Case: 15-51582   Doc# 16-1   Filed: 05/21/15   Entered: 05/21/15 19:24:29   Page 36 of 46

# EXHIBIT B

## IMPROVEMENTS

In addition to (the "Purchase Price") consisting of only the unit shell; the following Tenant Improvements will be provided by the Builder at the additional fee of $25.00 (Twenty-Five Dollars) per square foot. The Tenant Improvements shall include the following:

1. Sewer line under the Unit.

2. Electrical panel in the Unit.

3. Water to the Unit.

4. Gas, if any, to the Unit.

5. Main fire sprinkler line above the Unit. Drops are the responsibility of the Buyer.

6. Rooftop Heat Pump HVAC Units with Distribution and Thermostat.

7. Demising Walls (Units to be a minimum of 1,200 square feet).

8. One (1) Single Occupant Restroom per Unit.

9. 2'x 4' T-Bar Ceiling (Grid and Tile).

10. 2'x 4' Flourescent Lighting with Prismatic Lenses within T-Bar Ceiling Grid.

11. Electric Outlets and Switches per City of San Jose Building Code Minimum.

12. No Paint.

13. No Flooring.

All other improvements desired by Buyer shall be installed by Buyer at Buyer's expense.

IEW\074902.1
110805-HEWHEW

-17-

# EXHIBIT B

N & H Investments, LLC
2276 Senter Road
San Jose, CA 95112
October 27, 2008

John Nguyen
Bich Tong
Loc Phan
Mi Mi Nguyen
1845 Trudeau Way
San Jose, CA 95132

Re: Cancellation of Purchase and Sale Agreement and Escrow Instructions

Dear: John Nguyen, Bich Tong, Loc Phan and Mi Mi Nguyen

This is an agreement between N & H Investments, LLC ("Seller") and John Nguyen, Bich Tong, Loc Phan, and Mi Mi Nguyen ("Buyer") regarding the Purchase and Sale Agreement and Escrow Instructions ("Agreement") date March 9, 2007, in relation to the Agreement are the sale of real property located at 2276 and 2266 Senter Rd, 639 Quinh Ave, San Jose, CA 95112 and specifically Unit 21. The Unit is One Thousand Four Hundred Sixty Seven (1,467) square feet, sold for Eight Hundred Seventy Two Thousand Eight Hundred Sixty Five Dollars ($872,865.00) or Five Hundred Ninety Dollars ($595.00) per square foot. The Buyer has deposited Two Hundred Sixty One Thousand Eight Hundred Sixty Dollars ($261,860.00) ("Deposit") as of today's date into escrow #98200542 with Chicago Title Company, 110 W. Taylor Street, San Jose, CA 95112 ("Escrow Holder")

The agreement is to null, void and cancels the Agreement between the Seller and Buyer and to disburse some funds from the deposits made by the Buyer and deduction of those funds disbursed from total deposits made by Buyer. The disbursement of funds for this agreement is Fifty Thousand Dollars ($50,000) and will be made by N & H Investments, LLC.

By signing below both parties, agree that the facts and statements stated above are true especially pertaining to the issue of Fifty Thousand Dollars ($50,000) from the Seller receipt of it from the Buyer and that amount deducted from the Buyer's total deposits in addition to the following:

1. Disbursement of funds will be made by two checks.

2. The checks will be made to Mi Mi Nguyen on behalf of all the buyers.

3. Mi Mi Nguyen will distribute the funds accordingly to other buyers listed below.

John Nguyen, Bich Tong, Loc Phan, and Mi Mi Nguyen
October 27, 2008
Page 2

Buyers:

_____
John Nguyen

_____
Bich Tong

_____
Loc Phan

_____
Mi Mi Nguyen

Seller:

_____
N & H Investments, LLC
Hung Nguyen

# EXHIBIT C

N & H Investments, LLC
2276 Senter Road
San Jose, CA 95112
October 27, 2008

John Nguyen
Bich Tong
Loc Phan
Mi Mi Nguyen
1845 Trudeau Way
San Jose, CA 95132

Re: Cancellation of Purchase and Sale Agreement and Escrow Instructions

Dear: John Nguyen, Bich Tong, Loc Phan, and Mi Mi Nguyen

This is an agreement between N & H Investments, LLC ("Seller") and John Nguyen, Bich Tong, Loc Phan, and Mi Mi Nguyen ("Buyer") regarding the Purchase and Sale Agreement and Escrow Instructions ("Agreement") date March 9, 2007. In relation to the Agreement are the sale of real property located at 2276 and 2266 Senter Rd, 639 Quinn Ave, San Jose, CA 95112 and specifically, Unit 21. The Unit is One Thousand Four Hundred Sixty Seven (1,467) square feet sold for Eight Hundred Seventy Two Thousand Eight Hundred Sixty Five Dollars ($872,865.00) or Five Hundred Ninety Dollars ($595.00) per square foot. The Buyer has deposited Two Hundred Sixty One Thousand Eight Hundred Sixty Dollars ($261,860.00) ("Deposit") as of today's date into escrow #98200542 with Chicago Title Company, 110 W. Taylor Street, San Jose, CA 95112 ("Escrow Holder").

The agreement is to null, void and cancels the Agreement between the Seller and Buyer and to disburse some funds from the deposits made by the Buyer and deduction of those funds disbursed from total deposits made by Buyer. The disbursement of funds for this agreement is Fifty Thousand Dollars ($50,000) and will be made by N & H Investments, LLC.

By signing below, both parties, agree that the facts and statements stated above are true especially pertaining to the issue of Fifty Thousand Dollars ($50,000) from the Seller receipt of it from the Buyer and that amount deducted from the Buyer's total deposits in addition to the following:

1. Disbursement of funds will be made by two checks.

2. The checks will be made to Mi Mi Nguyen on behalf of all the buyers.

3. Mi Mi Nguyen will distribute the funds accordingly to other buyers listed below.

John Nguyen, Bich Tong, Loc Phan, and Mi Mi Nguyen
October 27, 2008
Page 2

Buyers:

_John Nguyen_

_Bich Tong_

_Loc Phan_

_Mi Mi Nguyen_

Seller:

N & H Investment, LLC
Hung Nguyen

Case No. 109-CV-155976

PROOF OF SERVICE BY MAIL -- CCP Section 1013 (a) and 2015

STATE OF CALIFORNIA COUNTY OF SANTA CLARA

I, Warren Nguyen, do declare and say that as follows: my place of business address is Nguyen & Crew, 93 Devine Street, #100, San Jose, CA 95110; I am a resident of the county where this mailing occurred, I am over the age of 18 years and am not a party to this action; I am familiar with the business practices for processing of correspondence for mailing with the United States Postal Service.

I served the within

**1) PLAINTIFFS' FOURTH AMENDED COMPLAINT**

On the interested parties/attorneys of record herein in:

EFFICIO LAW GROUP, LLC
111 West Saint John Street, Suite 888
San Jose, CA 95113
ATTN: Dan Do, Esq

PALADIN LAW GROUP, LLP
1176 Boulevard Way
Walnut Creek, CA 94595
ATTN: Bret A. Stone

I do declare under the penalty of perjury under the laws of the State of California that the forgoing is true and correct:

DATED: October 12, 2011 San Jose, CA

Warren Nguyen

-1-